IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANCIS J. GUGLIELMELLI,** | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO. 13-5764 |
| | : | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | : : | |
| | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                                                         December 16, 2014
<u>**MEMORANDUM OPINION**</u>

  Plaintiff seeks damages for bodily injury under an automobile insurance policy, which incorporated a "sign-down form," reducing the uninsured/underinsured motorist limits of liability available under the policy.  Plaintiff, who is listed as the first-named insured, did not execute the sign-down form.  Rather, Plaintiff's co-resident, listed as a second-named insured, executed the form.  Consequently, Plaintiff claims that the reduced uninsured/underinsured limits of liability are not binding.  Plaintiff also posits that a stacking waiver executed on a second, single-vehicle policy does not prohibit inter-policy stacking, nor does the "household exclusion" under that policy apply.

  Currently before me are cross-motions for summary judgment filed by Plaintiff, Francis J. Gugliemelli, and Defendant, State Farm Mutual Automobile Insurance Co. ("State Farm").  For the reasons that follow, I find that the sign-down form reducing Plaintiff's uninsured/underinsured motorist benefits is enforceable, and that the stacking waiver and exclusion found within the second policy prevents inter-policy stacking of coverage.  Consequently, I will grant State Farm's motion and deny Plaintiff's motion.

1

I.  **FACTUAL AND PROCEDURAL HISTORY**[1]

Plaintiff is the first-named insured on two automobile insurance policies furnished by Defendant, State Farm. The application for the first policy was submitted by Achmad Jayadi, on behalf of himself and Plaintiff, on March 11, 2006. Jayadi, who resided with Plaintiff, and is listed as the second-named insured, sought personal-use vehicle coverage for a 2000 Dodge Neon and a 2004 Suzuki. The application for the personal policy was signed by Jayadi only. At the time of application, Jayadi represented that he owned the Neon, and that he and Plaintiff jointly owned the Suzuki. (Stip. of Facts ¶¶ 4-5, 11, 21, 42.)

The application requested that the personal policy provide bodily injury liability limits of $100,000/$300,000.[2] In connection with the application, Jayadi also signed and submitted two separate forms on March 17, 2006: (1) an Acknowledgement of Coverage Selection form ("sign-down form"); and (2) a rejection of stacked uninsured and underinsured coverage limits ("rejection of stacked benefits form"). The sign-down form requested reduced uninsured and underinsured motorist liability limits in the amount of $15,000/$30,000 on each of the two vehicles. The rejection of stacked benefits form waived stacked coverage of the uninsured and underinsured limits.[3] Plaintiff did not sign the sign-down form, nor did he sign the rejection of stacked benefits form. After receiving these forms, State Farm issued Policy No. 80-1228-C11-38 effective March 11, 2006, listing Plaintiff as the first-named insured and Jayadi as an additional named insured. (Id. at ¶¶ 5, 7-11.)

---

[1] The parties have stipulated to a statement of facts to be used in deciding the motions at issue.

[2] The juxtaposition of these numbers signifies $100,000 per person, $300,000 per occurrence. This same format will be used throughout this Opinion.

[3] Where stacking coverage is provided, a named insured may combine the limits of uninsured or underinsured motorist coverage of more than one insured vehicle rather than being limited to the per person uninsured or underinsured motorist limit on any one vehicle. See 75 Pa. C.S. § 1738(a).

On October 8, 2007, State Farm was requested by either Plaintiff or Jayadi to delete the Suzuki from the policy and replace it with a Jeep Liberty. No other changes to the policy were requested at that time. Although the Jeep Liberty was titled solely in Plaintiff's name, State Farm was not notified of this fact. State Farm substituted the vehicles on that same day. From October 8, 2007 through September 15, 2010, the policy provided coverage to Jayadi and Plaintiff on the Dodge Neon and Jeep Liberty, with bodily injury liability limits of $100,000/$300,000 and uninsured/underinsured motorist limits of $15,000/$30,000. (Id. at ¶¶ 14-18.) Plaintiff and Jayadi were sent nine renewal notices and three amended declarations pages between 2006 and 2010, each of which listed the uninsured/underinsured motorist limits as $15,000/$30,000. Plaintiff and Jayadi paid lower premiums as a result of the reduced uninsured/underinsured limits. (Crisanti Aff. ¶¶ 2-5.)[4]

On October 23, 2009, Plaintiff submitted a Commercial Vehicle Insurance application on behalf of himself and Jayadi for coverage on a 2000 GMC Safari. In applying for the commercial policy, Plaintiff sought bodily injury liability limits of $100,000/$300,000 and uninsured/underinsured motorist limits of $100,000/$300,000. Plaintiff also signed a rejection of stacked benefits form and was listed as the first-named insured on the commercial policy. (Stip. of Facts ¶¶ 20-22.)

On September 15, 2010, Plaintiff was operating the Jeep Liberty when he was involved in an accident with a vehicle operated by Selina Coles-Daniels. The accident was caused by Coles-Daniels' negligence. Plaintiff sought recovery against Coles-Daniels for the personal injuries he sustained during the accident, but her policy provided bodily injury liability limits of $15,000/$30,000. With State Farm's consent, Plaintiff settled his claim against Coles-Daniels

---

[4] Although outside the stipulated facts agreed upon by the parties, the averments made in the Crisanti Affidavit, attached as an exhibit to State Farm's reply brief, have not been challenged or denied by Plaintiff.

3

for $15,000. Plaintiff claims to have suffered injuries far in excess of $15,000 and sought underinsured motorist coverage from State Farm. (Id. at ¶¶ 24-29.)

Recognizing that the rejection of stacked benefits submitted by Jayadi with respect to the personal policy did not comply with Pennsylvania law,[5] State Farm tendered to Plaintiff stacked underinsured motorist benefits from the personal policy totaling $30,000 (the $15,000 per person limit for underinsured motorist liability multiplied by the two vehicles covered by the personal policy). (Id. at ¶¶ 33-34.) Arguing that the sign-down form is not binding and that additional proceeds are due under the State Farm policies, Plaintiff filed suit, asserting a claim for bad faith pursuant to 42 Pa. C.S. § 8371. (Am. Compl. ¶¶ 27-44.)

State Farm responds that $30,000 is the maximum amount of underinsured motorist coverage to which Plaintiff is entitled for the September 15, 2010 accident, and seeks summary judgment on its counterclaim for declaratory judgment. Plaintiff has filed a cross-motion for summary judgment, insisting that the sign-down of underinsured motorist benefits executed by Jayadi is void, that Plaintiff is entitled to $200,000 in benefits under his personal policy ($100,000 in underinsured motorist coverage, stacked), and that he is additionally entitled to stacked benefits of $100,000 from the commercial policy, for a total of $300,000. For the reasons that follow, I agree with State Farm and will grant summary judgment in its favor.

---

[5] 75 Pa. C.S. § 1738(d) provides a form that insurance companies must present to insureds when insureds seek to waive stacked uninsured and underinsured motorist coverage. § 1738(e) states that the form provided in subsection (d) "must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void." Because Jayadi signed the rejection of stacked benefits form, but Plaintiff was in fact the first-named insured, State Farm treated the rejection form as void and provided Plaintiff with stacked underinsured benefits on his personal policy relating to the September 15, 2010 accident. (Stip. of Facts ¶¶ 33-34.)

4

## II. STANDARD OF REVIEW

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); FED. R. CIV. P. 56(c). On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 256. The same burdens and standards apply with regard to cross-motions for summary judgment. Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).

Here, the parties have stipulated to the relevant facts, so only questions of law remain.

## III. LEGAL ANALYSIS

Under Pennsylvania law, "the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008)). A court must first look to the language of the policy to determine the intent of the parties. Id. (quoting Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)). "[W]hen construing a policy, '[w]ords of

common usage . . . are to be construed in their natural, plain and ordinary sense.'" <u>Kane v. State Farm Fire & Cas. Co.</u>, 841 A.2d 1038, 1042 (Pa. Super. 2003) (quoting <u>Madison Const. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 106 (Pa. 1999)). When the language of a policy is clear and unambiguous, the court must give effect to that language. <u>CPB Intern., Inc.</u>, 562 F.3d at 595 (quoting <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 897 (Pa. 2006)). When a provision is ambiguous, however, the Court is to construe that language in favor of the insured. <u>Id.</u> "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." <u>Greene v. United Servs. Auto. Ass'n</u>, 936 A.2d 1178, 1185 (Pa. Super. 2007) (quoting <u>401 Fourth St., Inc. v. Investors Ins. Grp.</u>, 879 A.2d 166, 170 (Pa. 2005)).

### A. **The Validity of the "Sign-Down" of Underinsured Motorist Liability**

Because Jayadi is not listed as the first-named insured on the policy, Plaintiff asserts that Jayadi had no authority to bind him to reduced uninsured/underinsured motorist limits of liability. Section 1734 of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") states that "[a] named insured may request in writing the issuance of coverages [for uninsured and underinsured motorists] in amounts equal to or less than the limits of liability for bodily injury" selected under the policy. 75 Pa. C.S. § 1734. There is no dispute that Jayadi is a "named insured."

While the sections of the MVFRL regarding <u>rejection</u> of uninsured/underinsured coverage or stacked benefits specifically require a waiver be signed by the first-named insured, § 1734 does not have this requirement. <u>Compare</u> 75 Pa. C.S. §§ 1731, 1738 <u>with</u> <u>id.</u> at § 1734. Rather, the language of § 1734 is more expansive and allows for a reduction in coverage to be effectuated by a "named insured." Courts in this circuit have found that the language of § 1734

is unambiguous, requiring only "a named insured" to submit the sign-down form. See Leymeister v. State Farm Mut. Auto. Ins. Co., 100 F. Supp. 2d 269, 272 (M.D. Pa. 2000) ("The language of Section 1734 is clear on its face; all that is required to request lower limits of coverage is a writing requesting the same from a named insured. There is nothing to construe."); see also Young v. State Farm Mut. Auto Ins. Co., 54 Fed. Appx. 365, 367 (3d Cir. 2002) (citing Leymeister with approval). The fact that the MVFRL requires insurance companies to follow strict guidelines when an insured waives the entirety of his uninsured/underinsured coverage does not necessarily mean that such strict procedures are required where the insured takes the less drastic step of lowering his limits of liability. Leymeister, 100 F. Supp. 2d at 272.

Without precedent to support his position that Jayadi's signature on the sign-down form is insufficient to bind both insureds, Plaintiff focuses on State Farm's failure to obtain a new sign-down form when the Jeep Liberty was added to the personal policy in 2007. Plaintiff asserts that because the Jeep Liberty, which was titled solely in Plaintiff's name, replaced the Suzuki, which was jointly owned, the change in ownership obligated State Farm to obtain a new sign-down form from Plaintiff. Its failure to do so, Plaintiff contends, requires providing him with underinsured motorist coverage of $100,000/$300,000, the bodily injury limits of liability on the personal policy. Relevant case law does not support Plaintiff's position.

Precedent from Pennsylvania and the United States Court of Appeals for the Third Circuit holds that where a named insured executes a sign-down form, and then a new vehicle is later added to the policy, that new vehicle may be subject to the same uninsured/underinsured limits that previously existed under the policy. This rule holds true even where the added vehicle is owned by a new insured, who was not named under the policy at the time the election was made. Moreover, where the new insured is notified of the uninsured/underinsured limits that

were pre-existing under the policy, and he benefits from reduced premiums as a result of the lowered liability limits, the onus of adjusting the limits falls on that insured. See Kimball v. CIGNA Ins. Co., 660 A.2d 1386, 1387-89 (Pa. Super. 1995); Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 642 (3d Cir. 2000).

In Kimball, the plaintiff was added as a named insured to her mother's automobile insurance policy in 1991, when the plaintiff purchased a vehicle. 660 A.2d at 1387. Prior to the plaintiff being added to the policy as a named insured, her mother had executed a "sign down" form, reducing the uninsured/underinsured limits of coverage from $300,000 to $100,000. Id. When the plaintiff was involved in an accident the following year, the court held that she was bound by the reduced uninsured/underinsured limits selected by her mother. The plaintiff had been notified of the reduced limits (and had paid the corresponding reduced premiums) upon being added to the policy as a named insured. She had also been notified of the limits during two subsequent renewal periods. The court reasoned that "[t]o find that the plaintiff is not bound by her mother's election and remaining silent on the issue of increased coverage, while reaping the benefits of reduced rates, would be to reward inaction." Id. at 1389. See also Buffetta, 230 F.3d at 639-42 (holding plaintiff, who replaced former husband as the named insured post-divorce was bound by former husband's uninsured/underinsured sign-down).

The facts in the case before me are even more persuasive than those before the court in Kimball. Plaintiff was a named insured on the State Farm policy from its inception. Although he replaced one of the cars on the policy, he did not enter the policy as a new insured at that time. I have little difficulty concluding that if the Pennsylvania courts do not require an insurance company to obtain a new sign-down form when a new car and a new named insured

8

are added to a policy, State Farm had no obligation to obtain a new sign down from Plaintiff in this instance.

Plaintiff's policy was renewed a total of nine times between 2006 and 2010, with every renewal notice sent to Plaintiff and Jayadi indicating that the policy continued to provide uninsured/underinsured motorist limits of $15,000/$30,000. Plaintiff and Jayadi were also sent three amended declarations pages advising of the same. (Crisanti Aff. ¶¶ 2-4.) Plaintiff could have requested that State Farm increase these liability limits at any time prior to the accident, but chose not to, and, as a result, benefitted from lower premiums. Therefore, I find that Plaintiff is bound by the sign-down executed by Jayadi in accordance with the reasoning set forth in Kimball.

My conclusions are not altered by Plaintiff's discussion of Sackett v. Nationwide Mut. Ins. Co., 940 A.2d 329 (Pa. 2007) ("Sackett II"). In Sackett II, the Pennsylvania Supreme Court held insurers must obtain a new rejection of stacking form under § 1738 of the MVFRL when insureds add a new car to their policies, and the policies provide finite "after-acquired-car"[6] coverage. Plaintiff's reliance on Sackett II is misplaced for several reasons. Sackett II considered an insurer's obligations under § 1738, whereas the instant case pertains to an insurer's obligations under § 1734. Also, § 1738 considers the rejection of stacking benefits—a consideration wholly separate from the reduction of uninsured/underinsured limits of liability. Moreover, as Plaintiff himself acknowledges, the Jeep Liberty was not an "addition" to the policy; instead, it was a replacement vehicle, taking the place of the Suzuki. Therefore, Sackett II is not applicable here.

---

[6] After-acquired car clauses are frequently included in car insurance policies, and provide coverage for a newly-purchased car added to a pre-existing policy for either a finite period of time or continuing through the life of the policy. Sackett II, 940 A.2d at 333-34. The after-acquired car coverage provided by Plaintiff's policy was finite. (Pl.'s Cross Mot. for Summ. J., Ex. D.)

Plaintiff's argument that Sackett II obligated State Farm to obtain a new sign-down form for the Jeep Liberty is further undermined by Shipp v. Phoenix Insurance Co., 51 A.3d 219 (Pa. Super. 2012).  Shipp considered whether Sackett II's requirement for a new stacking waiver still applied where the after-acquired car was not an "added" vehicle, but instead replaced an existing vehicle covered by the policy.  The court in Shipp found that the "replacement vehicle" status "militates against the need for the insurer to re-obtain a waiver from the insured.  In the case of a replacement vehicle . . . [t]he only change is in the identity of the covered vehicle." Id. at 224.  Therefore, to the extent that cases discussing a wholly separate section of the MVFRL are relevant, Shipp indicates that a renewed sign-down form would not be required for the Jeep Liberty, as a replacement vehicle.[7]

For the above-stated reasons, I find that the elected limit of $15,000/$30,000 in uninsured/underinsured motorist coverage, which was selected by Jayadi, a named insured, and of which Plaintiff was notified numerous times, is valid and enforceable, and applies to Plaintiff's coverage on the 2007 Jeep Liberty.[8]

### B. Is Plaintiff Entitled to Additional Coverage from his Commercial Policy?

Plaintiff next argues that he is entitled to inter-policy stacking of benefits, which would allow him to utilize the $100,000/$300,000 in uninsured/underinsured motorist coverage he

---

[7] Plaintiff attempts to distinguish Shipp, arguing that the instant case is different because the two vehicles had different owners—the Suzuki was owned by Plaintiff and Jayadi, and the Jeep was only owned by Plaintiff.  However, Plaintiff has stipulated that State Farm was never informed that Plaintiff was the sole owner of the Jeep, and has presented no evidence to the contrary.  Therefore, I do not find this argument convincing.

[8] State Farm has acknowledged that the personal policy's stacking waiver was void.  Therefore, stacking applies, and the personal policy provides a maximum underinsured motorist benefit of $30,000.  State Farm has already tendered that amount to Plaintiff.

selected for the commercial policy.[9]  Although Plaintiff signed a rejection of stacking benefits for his commercial policy, he nonetheless asserts that the stacking benefits provided for in his personal policy must extend to his commercial policy as well.  While inter-policy stacking has been recognized by the Pennsylvania courts as a viable option to insureds, I find that it does not apply here.

In <u>Craley v. State Farm Fire & Casualty Co.</u>, 895 A.2d 530 (Pa. 2006), a woman was killed in an automobile accident by an uninsured drunk driver.  Her estate sought uninsured motorist benefits under her insurance policy, although the damages exceeded her policy's limits.  Therefore, the estate also sought uninsured motorist benefits from a policy held by the decedent's husband, Randall, under which the decedent had been an insured.  <u>Id.</u> at 533-34.  The insurer argued that a stacking waiver signed by Randall prevented inter-policy stacking because Randall's policy only insured one vehicle.  The court agreed, finding that, because the waiver indicated that his premiums would be lowered as a result of waiving stacked coverage, and because intra-policy stacking is unavailable to a policy insuring only one car, "the only interpretation fairly available to Randall was that his premium-reducing waiver applied to inter-policy stacking." <u>Id.</u> at 541-42.

As with <u>Craley</u>, here, Plaintiff's commercial policy only insured one vehicle—a GMC Safari.  Plaintiff similarly signed a stacking waiver with respect to the commercial policy, which notified him that his premiums would be reduced as a result.[10]  Without any other vehicles

---

[9] "Where multiple policies apply, payment shall be made in the following order of priority: (1) [a] policy covering a motor vehicle occupied by the injured person at the time of the accident[; and] (2) [a] policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured." 75 Pa. C.S. § 1733(a).

[10] The exact language of the waiver is as follows:

**REJECTION OF STACKED UNDERINSURED COVERAGE LIMITS . . .**

11

insured under the commercial policy, the reasoning in Craley applies, resulting in a waiver of inter-policy stacking. While stacking is available on Plaintiff's personal policy, Craley noted that it is the policy under which the plaintiff seeks the additional coverage, and that policy's exclusions, that are relevant to the inquiry. Id. at 533. Therefore, I find that inter-policy stacking with the commercial policy is not available to Plaintiff.

Even if the stacking waiver was not dispositive, coverage from the commercial policy would still be unavailable to Plaintiff for the September 10, 2010 accident due to what is commonly referred to as the "household exclusion." The relevant section of the commercial policy states as follows:

> THERE IS NO COVERAGE FOR AN **INSURED** WHO SUSTAINS **BODILY INJURY** WHILE **OCCUPYING** A MOTOR VEHICLE **OWNED BY YOU** OR ANY **RESIDENT RELATIVE** IF IT IS NOT **YOUR CAR** OR A **NEWLY ACQUIRED CAR**.
>
> This exclusion does not apply to the first **person** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while **occupying** a motor vehicle not **owned by** one or both of them.

(Def.'s Mot. for Summ. J., Ex. 7, p. 27.) The policy further defines "your car" to refer to the car listed on that policy's declaration page—which on the commercial policy was only the GMC Safari. (Id. at pp. 1, 8.)

---

> **By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available to me would be the sum of limits for each motor vehicle insured under the policy.** Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

(Def.'s Mot. for Summ. J., Ex. 6.)

Plaintiff argues that the household exclusion should not apply because he purchased the commercial policy in a separate capacity, as a business owner. Plaintiff does not dispute, however, that his and Jayadi's names were listed as named insureds on the policy, as opposed to the name of any business.

Plaintiff further asserts that the address listed on the policy, which was a garage separate and apart from Plaintiff's residence, indicates that the household exclusion does not apply. Although the exclusion recited above is commonly referred to as the "household exclusion," there is nothing within the language of the provision itself that indicates that it only applies to cars garaged within the same household. Indeed, the exclusion unambiguously prohibits extending coverage for an accident involving a car owned by the insured but not covered under the policy at issue. The Jeep Liberty was owned by Plaintiff, a named insured, but was covered under a separate policy. Therefore, the household exclusion applies unless Plaintiff can demonstrate that public policy should preclude its application. See Antanovich v. All State Ins. Co., 488 A.2d 571, 575 (1985) (holding that clear and unambiguous contract provisions must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy).

While household exclusions have frequently been challenged on public policy grounds, Pennsylvania courts and the Third Circuit have consistently upheld their enforceability. See Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1009-10 (Pa. 1998) (holding that household exclusion does not violate public policy); Ginther v. Farmers New Century Ins. Co., 324 Fed. Appx. 172, 175 (3d Cir. 2009) ("We have upheld the validity of household exclusion provisions in insurance policies that are intentionally separated, issued by the same insurance company, and that cover cars within the same household.") Plaintiff provides no precedent to support his argument that the household exclusion would not be enforceable in this instance. Therefore, I

find that Plaintiff cannot seek additional underinsured motorist coverage from the commercial policy for the September 15, 2010 accident.

## IV. **CONCLUSION**

Plaintiff is bound by the sign-down form regarding uninsured/underinsured motorist benefits executed by Achmad Jayadi—a named insured under the policy. Plaintiff is entitled to intra-policy stacking on the personal policy, for a total of $30,000 in coverage, which has already been provided to Plaintiff. Coverage for the accident is not available under the commercial policy due to the valid execution of a stacking waiver and the household exclusion within the commercial policy. Accordingly, State Farm's motion for summary judgment will be granted and Plaintiff's cross-motion will be denied.[11]

An appropriate Order follows.

---

[11] Because I find that State Farm provided Plaintiff with the amount of money due under the policy, judgment is granted in State Farm's favor with regard to Plaintiff's bad faith claim brought under 42 Pa. C.S. § 8371. "Bad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) (citing Coyne v. Allstate Ins. Co., 771 F. Supp. 673, 678 (E.D. Pa. 1991)). Where the policy does not provide for the specific coverage requested, an insurer has good cause to deny that coverage. Id.